# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2199

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Wayne Lee Lussier, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 1, 2005
Filed: September 13, 2005

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Wayne Lee Lussier ("Lussier") was convicted in the United States District Court for the District of Minnesota[1] after trial by jury on the charge of felon in possession of a firearm. During voir dire, the district court declined to declare a mistrial after a potential juror stated that he personally knew Brian Holthusen ("Holthusen"), Lussier's witness, and described him as "a neighborhood nuisance." The district court also declined to grant an offense level reduction pursuant to U.S.S.G. § 2K2.1(b)(2), but did depart downward pursuant to U.S.S.G. § 2K2.0.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

Lussier was sentenced to 15 months imprisonment. Lussier now appeals the denial of a mistrial and the denial of the § 2K2.1(b)(2) downward departure. Our initial opinion filed in this case was vacated upon the grant of Lussier's petition for rehearing. After giving due consideration to Lussier's arguments, we affirm the district court but modify our opinion as set forth below.

## II. *Background*

Lussier and Holthusen went scouting for hunting land on the Red Lake Indian Reservation. Lussier drove his truck during the trip and Holthusen brought along a rifle that he owned in case he saw a deer. Holthusen placed the rifle behind the seat in Lussier's truck and wrapped it in a snowmobile suit. At no time during their trip did Lussier handle the rifle. After they returned to the reservation, Lussier dropped Holthusen off at Holthusen's mother's house and told him that he was going to get cigarettes and would return. After dropping off Holthusen, Lussier did not go for cigarettes but instead went to the home of Connie Sumner ("Sumner"). Sumner, Lussier's former girlfriend, had obtained an order of protection against Lussier. Sumner was home when Lussier arrived and called the police to report his presence. After surveilling Sumner's car, Lussier knocked on her door. Sumner did not answer. She observed Lussier return to the driver's side of his truck. Through the window in the back of the truck, Sumner saw a rifle barrel moving to the passenger side of the vehicle. Lussier then got out of his truck and again knocked on Sumner's door.[2]

The Red Lake Police Department sent an officer to Sumner's home in response to her calls. After the officer arrived, he identified Lussier and informed him that he was in violation of a court order and was under arrest. Lussier responded that "he was going to get something out of his vehicle first." At that point, the officer looked toward the truck and noticed a rifle on the seat in plain view. The officer seized the

---

[2]Sumner called the police at least twice more during this time.

rifle. Lussier was charged in a one-count indictment with being a felon in possession of a firearm.

Trial in this matter commenced in Fergus Falls, Minnesota. During voir dire, the district court asked if any of the prospective jurors were familiar with the anticipated trial witnesses. One prospective juror, Kevin Johnson ("Johnson"), responded that he was familiar with Holthusen, Lussier's only witness. When the prospective juror was asked by the district court for specifics, the following colloquy ensued:

> The Court: Let's see. Number 36 is Mr. Johnson. Tell me about your yes answer there.
>
> The Juror: We have a hunting cabin north of Red Lake. We've had – Brian has been in our place before. He's been a neighborhood nuisance.
>
> The Court: Okay. I don't want you to say a whole lot more beyond that, so – and so you know that individual personally and you would have a problem with the credibility[?]
>
> The Juror: Yeah.
>
> The Court: Okay. Thank you. I'm going to excuse you at this point. Number 36, Mr. Johnson is excused.

Prior to the conclusion of jury selection, Lussier moved to strike the jury panel based on Johnson's comments regarding Holthusen. The district court took the matter under advisement. After the jury was sworn, the district court indicated that it had checked to see if it was possible to obtain a new pool of jurors and learned that no additional potential "jurors would be available for some period of time which would [have] require[d] a significant continuance of the trial." The district court then offered the

following three alternatives to address Lussier's concern that the jury pool had been tainted by Johnson's statements:

> I'm willing to ask each of the 14 jurors individually if they recall the response made by juror Kevin Johnson and whether or not they will exclude it from their consideration. And we can go through the 14 jurors individually and you can make the call as to whether you think that unfairly highlights or draws attention to it. Alternative number two is for me to instruct them as a group that anything that was said by any member of the prospective panel is not to be considered as evidence or in any way impacting upon their decision and they're to exclude it from their consideration of the issues in this case, and I would do that immediately if you thought that was helpful. The third alternative is for me to, in my standard boilerplate instructions when I talk to them about you should consider any matters which happen outside the courtroom should have no bearing on this, include outside the courtroom as well as matters which occurred during jury selection should not be considered, and I could do that either at the conclusion of the case or immediately.

After reiterating his request for a mistrial, which was denied, Lussier requested that the district court give a curative instruction in its final instructions to the jury. Accordingly, the district court instructed the jury that "nothing that I have said during the course of this trial or anything that might have been said during the jury selection process is evidence in this case." The jury found Lussier guilty.

Prior to sentencing, Lussier argued that pursuant to U.S.S.G. § 2K2.1(b)(2), he was entitled to a reduction of his offense level from level 14 to level 6 on the grounds that he possessed the firearm for lawful sporting purposes. The government opposed the reduction, arguing that "the circumstances of defendant's actual possession and use of the firearm preclud[ed] application of the lawful-sporting-purpose reduction under U.S.S.G. § 2K2.1(b)(2)." At sentencing, the district court determined that Lussier was not entitled to the offense level reduction under § 2K2.1(b)(2), but

granted a six-month downward departure from the applicable guideline range of 21 to 27 months under U.S.S.G. § 5K2.0 based on the unusual circumstances presented in the case. The district court explained the basis for its downward departure as follows:

> I have chosen to depart downward slightly under the authority of 5K2.0. . . . I think the combination of factors, including the unusual circumstances, exceptional circumstances, take this outside of the heartland of the felon in possession of a firearm. There is a mix of motives between sporting purposes by the person you were with, . . . Holthusen, and the gun remaining there that convince the Court that it is not a heartland-type offense of a felon in possession and therefore the limited downward departure of six months is appropriate in my judgment.

Lussier was sentenced to 15 months of imprisonment and filed a timely notice of appeal.

## III. *Discussion*

Lussier first argues that the district court erred in failing to declare a mistrial and dismiss the jury. The Sixth Amendment right to jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "It is a well-established rule that the allowance of a mistrial motion ordinarily rests in the trial court's discretion and that the trial court's ruling thereon will not be set aside except upon a clear showing of abuse of discretion." *United States v. Wade*, 467 F.2d 1226, 1229 (8th Cir. 1972).[3] We defer

---

[3]In *Wade*, defendants argued that they were denied a fair trial after a prospective juror made a prejudicial remark about one of the defendants. *Id.* at 1228. Specifically, the prospective juror, when asked if she knew one of the defendants, replied: "He shot my son." *Id.* We affirmed the denial of a mistrial, holding that "[w]hile the unsolicited remark by the juror was improper, it was innocently made."

to the discretion of the trial court, particularly in the absence of any showing of actual bias. *United States v. Williams*, 604 F.2d 1102, 1119 (8th Cir. 1979).

Lussier urges us to apply *Mach v. Stewart*, 137 F.3d 630 (9th Cir. 1997). In *Mach*, the defendant, charged with a sex offense against a child, argued that the jury was tainted after a prospective juror, who was a social worker, stated during the voir dire that she would have a difficult time being impartial given her line of work and that sexual assault had been confirmed in every case in which one of her clients reported such an assault. *Id.* at 632. The district judge further questioned the prospective juror and elicited at least three more statements "that she had never, in three years in her position, become aware of a case in which a child had lied about being sexually assaulted." *Id.* Moreover, after further questioning of the panel as a whole, the prospective juror stated that she had taken psychology courses and had worked extensively with psychologists and psychiatrists. *Id.* While the prospective juror was struck for cause, the district court denied the defendant's request to declare a mistrial. *Id.* The Ninth Circuit reversed and held that "[a]t minimum, when Mach moved for a mistrial, the [district] court should have conducted further voir dire to determine whether the panel had in fact been infected by . . . [the prospective juror's] expert-like statements." *Id.* at 633. Moreover, the court held that the statement "was highly inflammatory and directly connected to Mach's guilt." *Id.* at 634. As a result, the case was remanded for new trial. *Id.*

---

*Id.* at 1229. Moreover, the remark did not have a bearing on defendants' guilt of the crime charged. *Id.* The district court also instructed the jury to disregard the statement immediately after it was made. *Id.* We reasoned that the district court "did all that could be done to obtain all information possible to aid it in its determination of whether the juror's statement would deprive defendants of a fair and impartial trial." *Id.* In dissent, Judge Ross reasoned that "the remark was a direct accusation of . . . committing a serious crime in which he [defendant Willie Horton] was not charged, and the caution and instructions of the court could not possibly erase the prejudicial effect of the remark from the minds of the jury." *Id.* at 1230.

We are not persuaded to apply *Mach* in this circuit on these facts. In this case, the prospective juror's remarks neither charged Lussier with a crime, nor had a bearing on Lussier's guilt of the crime charged. In fact, the remarks did not pertain to Lussier at all, as they referred only to Holthusen. While the statements could affect Holthusen's credibility, they were neither expert-like nor highly inflammatory. The district court gave Lussier the option of several curative measures, and Lussier's counsel agreed to address the issue in jury instructions, and rejected other measures as "cures worse than the disease." As a result, the court instructed the jury that any thing said during jury selection was not evidence in the case. The district court did not abuse its discretion in refusing Lussier's request for a mistrial.

Lussier also argues that the district court abused its discretion in failing to grant a reduction in offense level pursuant to U.S.S.G. § 2K2.1(b)(2). Section 2K2.1(b)(2) allows a decrease in offense level if the defendant possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition.[4] We review the application of the Sentencing Guidelines de novo and review the district court's factual findings for clear error. *United States v. Mathijssen*, 406 F.3d 496, 498 (8th

---

[4]The applicability of this section is determined by relevant surrounding circumstances, which include the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history, and the extent to which possession was restricted by local law. U.S.S.G. § 2K2.1 cmt. n.10. *See also United States v. Ramirez-Rios*, 270 F.3d 1185, 1187 (8th Cir. 2001) ("[i]n determining whether § 2K2.1(b)(2) applies, the focus of the inquiry is the 'intended lawful use'"). As we explained in *United States v. Mendoza-Alvarez*, 79 F.3d 96, 99 (8th Cir. 1996), "an 'otherwise unlawful use' under § 2K2.1(b)(2) must be some action similar to an 'unlawful discharge,' such as using to gun to threaten or beat another person." *Mendoza-Alvarez* also warns that "[t]he context of § 2K2.1(b)(2) also supports an interpretation of 'otherwise unlawfully use' requiring something more than a bare violation of . . . law." *Mendoza-Alvarez*, 79 F.3d at 99.

Cir. 2005). *See also*, *United States v. Mashek*, 406 F.3d 1012, 1016 (2005). Lussier has the burden of proving that a reduction in the offense level should apply. *United States v. Ramirez-Rios*, 270 F.3d 1185, 1187 (8th Cir. 2001) (citing *United States v. Dinges,* 917 F.2d 1133, 1135 (8th Cir.1990)). *See also United States v. Collins*, 313 F.3d 1251, 1254 (10th Cir. 2002) ("[i]t is the defendant's burden to show the applicability of U.S.S.G. § 2K2.1(b)(2)").

Lussier argues that he possessed the firearm solely for lawful sporting purposes and that he did not unlawfully discharge or otherwise unlawfully use the firearm. We agree that Lussier's possession and use of the firearm during his scouting trip with Holthusen would be consistent with a sporting purpose. However, Lussier's act of picking up the rifle and moving it from behind the seat and placing it on the passenger side of the seat while in Sumner's driveway could have reasonably been seen as having a purpose other than sporting when done in conjunction with an obvious violation of Sumner's order of protection. Lussier had the burden of convincing the trial court that his moving of the rifle had a sporting purpose and he failed to carry that burden. The district court's factual findings were not clearly erroneous. Upon these facts, the denial of the § 2K2.1(b)(2) downward departure was not unreasonable.

Finally, Lussier's petition for rehearing mentions our then pending case of *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) and its potential applicability to the issues raised in Lussier's appeal and our review standard. Under *Pirani*, an appellant must show plain error to obtain resentencing for error under the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005). The record in this case does not support a finding of plain error. Lussier cannot show a reasonable probability of a more favorable sentence should the case be remanded. *Pirani*, 406 F.3d at 550. We affirm the judgment of conviction and sentence.

_____