William MACH, Petitioner–Appellant,

v.

Terry STEWART;  Grant Woods, Attorney
General, Respondents–Appellees.

No. 96–16519.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1997.

Decided Nov. 10, 1997.

Amended Nov. 20, 1997.

Second Amended Opinion Feb. 11, 1998.

Before: FLETCHER, BOOCHEVER, and REINHARDT, Circuit Judges.

## OPINION

BOOCHEVER, Circuit Judge.

■ William C. Mach (Mach) was convicted in Arizona state court of sexual conduct with a minor under age 14. After the Arizona Court of Appeals affirmed his conviction and the Arizona Supreme Court denied his petition for review, Mach petitioned for habeas corpus in the United States District Court.[1] His petition was denied. On appeal from that denial, Mach contends that he was tried by a biased and tainted jury and that his trial violated due process because the court permitted last-minute introduction of prior bad acts.[2] The district court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. § 2253, and we reverse.

## STATEMENT OF FACTS

Mach was charged with sexual conduct with a minor under 14 years of age. The victim was an eight-year-old girl who claimed that while she was at Mach's home visiting his daughter, he had performed an act of oral sex on her.

The first prospective juror to be questioned during voir dire was Ms. Bodkin, a

William Mach (argued), Yuma, AZ, pro se.

Jim D. Himelic, Tucson, AZ, for petitioner-appellant.

Paul McMurdie, Assistant Attorney General, Phoenix, AZ, for respondents-appellees.

1. The Antiterrorism and Effective Death Penalty Act of 1996 does not affect Mach's case because his petition was filed before the act became law. *Lindh v. Murphy*, —— U.S. ——, ——, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997).

2. Mach also argues that the trial court's limitations on his cross-examination of an expert witness violated the Confrontation Clause. Because

we reverse the district court's dismissal of his habeas corpus petition due to the tainted jury having a substantial effect on the verdict, we do not address this issue. Similarly, we do not consider the question Mach raises regarding the propriety of the admission of the evidence of prior touching.

social worker with the State of Arizona Child Protective Services. Bodkin stated that she would have a difficult time being impartial given her line of work, and that sexual assault had been confirmed in every case in which one of her clients reported such an assault. The court continued to question Bodkin on this subject before the entire venire panel. The judge's questions elicited at least three more statements from Bodkin that she had never, in three years in her position, become aware of a case in which a child had lied about being sexually assaulted. The court warned Bodkin and the venire panel as a whole that "the reason we have trials is to determine whether or not a person is guilty of the charges made against him, and you do that by seeing what the state has to give you by way of evidence and you apply that to whatever you find to be the facts. You listen to the arguments of counsel." The judge went on to ask Bodkin whether she thought she could do that, to which she responded that she would try, and that she "probably" could.

Later the court questioned the panel regarding psychology experience:

> THE COURT: ... Are any of you—are any of you in psychology or have you ever been in psychology? I mean psychologist or clinical psychologist or psychiatrist? Anybody here have any background in psychology?
>
> . . . .
>
> MS. BODKIN: I've taken psychology courses and worked extensively with psychologists and psychiatrists.
>
> THE COURT: Have you had any courses in child psychology?
>
> MS. BODKIN: Yes.
>
> THE COURT: Thank you, Miss Bodkin.

Transcript of Proceedings, Trial Day One, at 30.

The court struck three jurors for cause—jurors who indicated that they had been victims of, or close to victims of, a sexual crime. Mach then moved for a mistrial, arguing that the entire panel had been tainted by the exchange between the court and venireperson Bodkin. The court denied the motion, but struck Bodkin for cause. Mach renewed his motion for mistrial, again arguing that the problem was less Bodkin herself and more the effect her statements had on the other panel members, but again the court denied the motion.

A jury found Mach guilty, and the Arizona Court of Appeals affirmed his conviction. The Arizona Supreme Court denied his petition for review. Mach filed a petition for writ of habeas corpus in the United States District Court, which the district court denied. Mach now appeals to this court.

## ANALYSIS

The district court's decision to grant or deny a section 2254 habeas petition is reviewed de novo. *Martinez–Villareal v. Lewis,* 80 F.3d 1301, 1305 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). Findings of fact made by the district court relevant to its decision are reviewed for clear error. *Moran v. McDaniel,* 80 F.3d 1261, 1268 (9th Cir.1996). When "reviewing a state court determination in a habeas corpus proceeding," this court generally asks "whether the error had substantial and injurious effect or influence in determining the jury's verdict." *California v. Roy,* —— U.S. ——, ——, 117 S.Ct. 337, 338, 136 L.Ed.2d 266 (1996) (per curiam) (quotation omitted). However, that standard does not apply to "structural defects in the constitution of the trial mechanism, which defy analysis by harmless-error standards." *Id.* "The existence of such defects-deprivation of the right to counsel, for example-requires automatic reversal of the conviction because they infect the entire trial process." *Brecht v. Abrahamson,* 507 U.S. 619, 629–30, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993).

Mach contended at trial and continues to contend that the exchange between the trial court judge and potential juror Bodkin impermissibly tainted the jury pool to the extent that the court should have granted a mistrial. He suggests that this failure to grant a mistrial caused structural error that can be remedied only by a reversal of his conviction.

During voir dire, the trial judge elicited from Bodkin (a) that she had a certain

amount of expertise in this area (she had taken child psychology courses and worked with psychologists and psychiatrists; she worked with children as a social worker for the state for at least three years); and (b) four separate statements that she had *never* been involved in a case in which a child accused an adult of sexual abuse where that child's statements had not been borne out. While the court did warn Bodkin and the general pool that jurors are to make determinations based on the evidence rather than on their own experiences or feelings, it went on to elicit yet another statement from Bodkin that she had never known a child to lie about sexual abuse. The court asked the other jurors whether anyone disagreed with her statement, and no one responded.

■ The Sixth Amendment right to jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). "Even if 'only one juror is unduly biased or prejudiced,' the defendant is denied his constitutional right to an impartial jury." *United States v. Eubanks,* 591 F.2d 513, 517 (9th Cir.1979); *see also United States v. Allsup,* 566 F.2d 68, 71 (9th Cir.1977). Due process requires that the defendant be tried by a jury capable and willing to decide the case solely on the evidence before it. *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 945–46, 71 L.Ed.2d 78 (1982).

■ At a minimum, when Mach moved for a mistrial, the court should have conducted further voir dire to determine whether the panel had in fact been infected by Bodkin's expert-like statements. Given the nature of Bodkin's statements, the certainty with which they were delivered, the years of experience that led to them, and the number of times that they were repeated, we presume that at least one juror was tainted and entered into jury deliberations with the conviction that children simply never lie about be-

ing sexually abused. This bias violated Mach's right to an impartial jury.[3]

■ The error in this case arguably rises to the level of structural error. While trial error occurs during the presentation of the case to the jury and thus can be "assessed in the context of other evidence presented," *Arizona v. Fulminante,* 499 U.S. 279, 307–08, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991), structural errors "infect the entire trial process." *Brecht v. Abrahamson,* 507 U.S. 619, 630, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993); *Thompson v. Borg,* 74 F.3d 1571, 1574 (9th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 227, 136 L.Ed.2d 159 (1996). The error in this case, the jury's exposure during voir dire to an intrinsically prejudicial statement made four times by a children's social worker, occurred before the trial had begun, resulted in the swearing in of a tainted jury, and severely infected the process from the very beginning. To force a defendant to trial, over his objections, before such a jury, when an unbiased jury can be impanelled without any substantial loss to the court or the prosecution, serves no legitimate interest. Nor would the correct approach seem to be to "quantitatively assess[ the error] in the context of other evidence presented," *Brecht,* 507 U.S. at 629, 113 S.Ct. at 1717, because all of the "other evidence" presented during the case was received by a jury that was biased from the outset.

This case is unlike *Thompson v. Borg,* which applied a "harmless-error" standard when a veniremember stated during voir dire that he had read in a newspaper that the defendant had "pleaded guilty at one time and changed it." 74 F.3d at 1573. The *Thompson* court observed that the remark was "vague and awkwardly phrased" and that it was elicited by defense counsel. *Id.* at 1576. Most important, however, the court found that the error "resemble[d] admission of an involuntary confession," which had been classified by the Supreme Court as trial error. *Id.* at 1574. Because the error in this case consisted of an unequivocal and highly

---

3. Furthermore, Mach's inability to confront and cross-examine Bodkin implicates the Sixth Amendment's Confrontation Clause. *Jeffries v. Wood,* 114 F.3d 1484, 1490 (9th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997) ("When a juror communicates objective extrinsic facts regarding the defendant or the alleged crimes to other jurors, the juror becomes an unsworn witness within the meaning of the Confrontation Clause.").

prejudicial statement made before a jury was sworn and because the statement does not resemble the erroneous introduction of evidence that can be weighed against other evidence, we are reluctant to describe the error as "trial error." See *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). "These are structural defects in the constitution of the trial mechanism, which defy analysis by "harmless error" standards. The entire conduct of the trial from beginning to end is obviously affected ... by the presence on the bench of a judge who is not impartial." *Id.* at 309–10, 111 S.Ct. at 1264–65. We see little differences between a trial by a judge who is not impartial and trial by a biased jury.[4]

Nonetheless, because this error requires reversal under the harmless-error standard as well, we need not decide whether it constitutes structural error. Under the harmless-error standard, we must determine whether the error had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623, 113 S.Ct. at 1714. Highly significant is the nature of the information and its connection to the case. *See Lawson v. Borg*, 60 F.3d 608, 612–613 (9th Cir.1995) (noting that "reversible error commonly occurs where there is a direct and rational connection between the extrinsic material and a prejudicial jury conclusion, and where the misconduct relates directly to a material aspect of the case"); *Dickson v. Sullivan*, 849 F.2d 403, 407 (9th Cir.1988) (finding prejudice when extrinsic information was "both directly related to a material issue in the case and highly inflammatory"). The result of the trial in this case was principally dependant on whether the jury chose to believe the child or the defendant. There can be no doubt that Bodkin's

statements had to have a tremendous impact on the jury's verdict. The extrinsic evidence was highly inflammatory and directly connected to Mach's guilt. Bodkin repeatedly stated that in her experience as a social worker, children never lied about sexual assault. The bulk of the prosecution's case consisted of a child's testimony that Mach had sexually assaulted her. We thus find Bodkin's statements to have substantially affected or influenced the verdict and therefore reverse the conviction.[5]

## CONCLUSION

Because the jury was tainted in violation of Mach's sixth amendment right to an unbiased jury and because that taint "substantially affected the jury's verdict," we REVERSE the district court's dismissal of Mach's petition for writ of habeas corpus and REMAND for issuance of the writ directed to the state to vacate the conviction and to release Mach unless he is retried within a reasonable period of time.

---

**4.** The Tenth Circuit recently held that because the trial judge informed a jury panel that the defendant would be pleading guilty to the crimes charged it was improper to constitute a jury from that panel after the defendant had changed his mind. The court held "selection of jurors from that same panel implicates constitutional rights of such magnitude that the error is not susceptible to harmless error review." *United States v. Iribe–Perez*, 129 F.3d 1167, 1169 (10th Cir.1997).

**5.** Although we find that Bodkin's "communication by its nature was intrinsically prejudicial,"

*Jeffries v. Wood*, 114 F.3d 1484, 1491 (9th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997), we have considered other factors that could possibly diminish the impact of her statements on the verdict, including their clarity, their similarity to other information presented at trial, their context in the trial, and the availability of curative instructions. *See id.* at 1491. Our consideration of these factors only confirms the highly prejudicial nature of her statements.