# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Appellant,<br><br>v.<br><br>TERRANCE ANTHONIA PAIGE,<br><br>Respondent. | No. 77722-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: June 17, 2019 |

ANDRUS, J. — Terrance Paige appeals his convictions of residential burglary and theft in the second degree following a jury trial. Because a majority of the venire had some experience with the crimes of burglary or theft and shared those experiences during voir dire, Paige claims that defense counsel provided constitutionally inadequate representation by failing to seek a new jury panel. He further contends that the trial court's failure to dismiss the panel violated his right to an impartial jury. We disagree with both contentions. We remand to strike the DNA[1] collection fee and otherwise affirm Paige's judgment and sentence.

## FACTS

On August 29, 2017, Merriann and Isaac Fu and their two children returned home after church to discover that their home had been burglarized. Merriann and Isaac drove home in separate cars.[2] Isaac pulled up to the house

---

[1] Deoxyribonucleic acid.

[2] We refer to Isaac and Merriann Fu by their first names for clarity.

a few minutes after Merriann and saw two young men run from the back of the house. They were carrying items including what appeared to be laptop computers. Issac followed the men in his vehicle and eventually saw them enter a wooded park. Issac parked at the edge of the park and called the police.

Merriann did not notice anything unusual when she first entered the house, but when she went back inside with her children, she found that several rooms had been ransacked. The Fus discovered that several items were missing, including a child's coin collection, two laptop computers, approximately $600 in cash, a gift card, jewelry, and watches.

A City of Kent K9 police officer responded and began a track to look for the suspects at a trail leading to the wooded area. The dog located a suspect, later identified as Terrance Paige, hiding in thick bramble. Paige had coins, watches, and jewelry in his pockets. A police officer brought Isaac to the place where police apprehended Paige and Isaac identified Paige as one of the men he saw running from his house. The Fus recognized the items recovered from Paige's pockets. The police were unable to locate a second suspect.

The Fus had a security camera on the front of their house that took a photograph when it detected motion. On the date of the incident, the camera took a photograph that showed two men walking toward the house when the family was out.

About an hour or two before the Fus arrived home and discovered the burglary, two men approached another house in the Fus' neighborhood, rang the doorbell, and offered yardwork services to the resident. This neighbor later

viewed the photograph taken by Fus' security camera and identified the men as the same people who came to his home.

The State charged Paige with residential burglary and theft in the second degree. The venire was composed of 50 potential jurors. During voir dire, the court described the charges and asked if any members of the venire had "experience with related or similar types of allegations." Almost half of the venire, including nine individuals later selected to serve as jurors, reported that either they, or someone they knew, had experience with theft or burglary. The court questioned the members of the jury panel individually. They reported either personal experiences or experiences of their neighbors or family members with vehicle break-ins, residential burglaries, and burglaries at places of employment. A similar number reported that they, a relative, or close friend had been a victim of some crime in the past.

When the court asked if any members of the panel had concerns about their ability to be impartial, only one potential juror responded affirmatively. Juror No. 10 initially reported concerns about partiality, due to some prior experiences with vandalism and a recent "upsetting" incident involving police officers running through the juror's property to chase a suspect. But after the court further explained that jurors must make a decision based on the evidence, the juror expressed a willingness to be "open-minded." Juror No. 10 was not selected for the jury. Later, the prosecutor asked again whether any of the potential jurors felt they could not set aside their personal experience with theft and/or burglary and fairly weigh the evidence. None of the potential jurors responded affirmatively.

Eleven members of the venire reported specific personal experience with residential burglary. The prosecutor questioned the prospective jurors individually about their experiences and the likelihood that their past experience would affect their view of the evidence. Of the thirteen venire members selected to serve as jurors, four reported past experience specifically with residential burglary. One of the four said that 35 years ago, while in the process of moving residences, someone stole some personal belongings. Another reported that during childhood, the juror's parents' home had been burglarized while the family was away on vacation. Another juror reported two burglaries and one attempted burglary, one of which occurred in the 1980s. Finally, one juror's home was burglarized six years previously, but the perpetrator was "scared away" quickly and was only able to take some documents. Another juror, who had not initially responded, reported past burglaries of some dairy outbuildings owned by the juror's family. The juror said the incidents were not a "big deal" and that the burglars stole mainly tools. Each of these jurors said their personal experiences would not affect their ability to fairly consider the evidence.

Neither the State nor the defense challenged any of the members of the venire for cause. And neither side exercised all available preemptory challenges.

Following a two-day trial, the jury convicted Paige as charged. The court imposed a standard range sentence.

ANALYSIS

Paige alleges ineffective assistance of trial counsel based on counsel's failure to seek dismissal of the jury panel because of the high percentage of the

venire who had past personal experience with crimes of burglary or theft. Paige also contends that even in the absence of a defense motion, the trial court had an obligation to dismiss the jury panel. Paige claims that as a result of counsel's conduct and trial court error, he was deprived of his right to a fair and impartial jury.

The Washington Constitution guarantees a criminal defendant the right to a fair trial by "unbiased jurors." Wash. Const., art. I, § 22; State v. Momah, 167 Wn.2d 140, 152, 217 P.3d 321 (2009). The Sixth Amendment to the United States Constitution also guarantees the right to a fair trial by impartial jurors. Irvin v. Dowd, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961).[3] The right to an impartial jury does not, however, require "that the jurors be totally ignorant of the facts and issues involved." Irvin, 366 U.S. at 722. As the United States Supreme Court has recognized, "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." Smith v. Phillips, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin, 366 U.S. at 723.

Persons selected for jury service must be selected at random from a fair cross section of the population served by the court. RCW 2.36.080(1); Brady v. Fibreboard Corp., 71 Wn. App. 280, 282, 857 P.2d 1094 (1993). The Sixth and Fourteenth Amendments of the federal constitution similarly entitle litigants to a "petit jury selected from a fair cross section of the community." Duren v.

---

[3] The Washington Constitution provides no greater protection than the federal right to an impartial jury. State v. Fire, 145 Wn.2d 152, 163, 34 P.3d 1218 (2001).

Missouri, 439 U.S. 357, 359, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979). Because the jury panel must be randomly selected, challenges to the composition of the panel are limited. CrR 6.4(a) requires trial courts to sustain a challenge to the entire jury panel only if it is based on a "material departure from the procedures prescribed by law for their selection." Our supreme court has held that "[w]here the selection process is in substantial compliance with the statutes, the defendant must show prejudice." State v. Tingdale, 117 Wn.2d 595, 600, 817 P.2d 850 (1991); State v. Roberts, 142 Wn.2d 471, 518, 14 P.3d 713 (2000).

It is well settled that to demonstrate ineffective assistance of counsel, Paige must show that: (1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness considering all the circumstances; and (2) the deficient representation prejudiced the defendant. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). He must overcome the strong presumption that counsel's performance was reasonable. State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Where the alleged deficient conduct is the failure to bring a motion, the defendant can establish prejudice only if the motion would have been granted. State v. Price, 127 Wn. App. 193, 203, 110 P.3d 1171 (2005), aff'd, 158 Wn.2d 630, 146 P.3d 1183 (2006). We need "not address both prongs of the ineffective assistance test if the defendant's showing on one prong is insufficient." State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Paige does not argue that the jury panel was not based on a random selection process. He does not claim that the jury selection departed from

relevant statutory procedures. He does not point to anything in the record to indicate that any individual selected to serve on the jury exhibited actual bias. Paige baldly asserts that "without question," a new venire would not have included similar numbers of individuals who had personal experience with the type of crimes as issue. Although this argument is based on a speculative premise, the right to a jury selected from a fair cross section of the local population does not entitle a party to any specific composition of jurors. State v. Davis, 141 Wn.2d 798, 837, 10 P.3d 977 (2000).

Paige does not contend that the comments of any member of the venire were overly prejudicial. Instead, he claims that the cumulative effect of the potential jurors' "inordinately strong sentiments" about burglary and theft and the "deeply affecting accounts" of their experiences tainted the jury pool.

Paige relies on Mach v. Stewart, 137 F.3d 630 (9th Cir. 1997). In that case, the defendant was on trial for a sex offense involving an eight-year-old child. Mach, 137 F.3d at 631. A prospective juror, a social worker, stated that she would have a difficult time being impartial because of her work experience. Mach, 137 F.3d at 631-32. She also said that "sexual assault had been confirmed in every case in which one of her clients reported such an assault." Mach, 137 F.3d at 632. The court continued to question the prospective juror, eliciting "at last three more statements from [the prospective juror] that she had never, in three years in her position, become aware of a case in which a child had lied about being sexually assaulted." Mach, 137 F.3d at 632. The court asked the other members of the jury panel whether anyone disagreed with the

7

woman's statements and no one responded. Mach, 137 F.3d at 633. The trial court denied Mach's motion for a mistrial in which he argued that the entire panel had been tainted by the exchange between the court and this prospective juror. Mach, 137 F.3d at 632.

The Ninth Circuit reversed. Mach, 137 F.3d at 634. The court held the juror's statements tainted the jury because they were "highly inflammatory and directly connected to Mach's guilt." Mach, 137 F.3d at 634. The juror's comments had an "expert-like" quality given her years of experience and degree of certainty. Mach, 137 F.3d at 633. The court concluded the juror's repetition of the statements created an especially high risk they would affect the verdict. Mach, 137 F.3d at 633. The court explained that reversal was warranted because the trial was "principally dependent [sic] on whether the jury chose to believe the child or the defendant." Mach, 137 F.3d at 634.

Mach is easily distinguishable. None of the members of the venire made repeated, confident assertions addressing the evidence, Paige's culpability, or potential credibility of the witnesses. No prospective juror professed any expertise. No prospective juror's statements were tantamount to the introduction of inflammatory, extrinsic evidence from an expert that was directly connected to Paige's guilt. See Mach, 137 F.3d at 633.

Paige greatly overstates the case by describing the potential jurors' discussion of their experiences as highly emotionally charged, creating an atmosphere of "irremediable sympathy" for the victims. A few members of the panel, none of whom ultimately served on the jury, reported lingering emotion

stemming from their experiences, described a feeling of having been invaded or a diminished sense of security, or said they lost items of personal value. But other jurors described experiences that were far in the past, in neutral terms, with no indication of a lasting emotional impact. None of the individuals who served as jurors expressed doubt about their ability to set aside their personal experience and impartially consider the evidence.

Cumulatively, the potential jurors' statements were not prejudicial or inflammatory and did not infuse the process with emotion or otherwise taint the jury. Under these circumstances, Paige cannot demonstrate that counsel was deficient for failing to move to dismiss the venire or that trial court would have granted such a motion. His ineffective assistance of counsel claim fails.

Paige cites no authority supporting the position that a trial court is obligated to dismiss a jury panel sua sponte under these circumstances—merely because a high percentage of potential jurors had personally experienced or knew others who had experienced relatively common crimes. For instance, Paige cites State v. Irby, 187 Wn. App. 183, 197, 347 P.3d 1103 (2015), which involved the trial court's failure to dismiss a juror, in the absence of challenge for cause, after the juror made an unqualified statement of actual bias against the defendant. Similarly Hughes v. United States, 258 F.3d 453, 464 (6th Cir. 2001), involved a claim of ineffective assistance of counsel based on the failure to challenge a particular juror who openly declared an inability to impartially weigh the evidence based on her personal relationships. But neither case is analogous to this case because not a single juror exhibited any actual bias or inability to

9

impartially weigh the evidence. In the absence of any showing of actual bias, we conclude that Paige received a fair trial by an impartial jury. Therefore, his claim of trial court error also fails.

In a supplemental assignment of error, Paige seeks to strike the $100 DNA fee from the judgment and sentence. The State concedes that, while this legal financial obligation was properly imposed at the time of sentencing, it should be stricken pursuant to recently amended RCW 43.43.7541 and State v. Ramirez, 191 Wn.2d 732, 426, P.3d 714 (2018). We accept the State's concession and agree.

We remand to the trial court to strike the $100 DNA fee. We otherwise affirm Paige's convictions and sentence.

Andrus, J.

WE CONCUR: