COURT OF APPEALS
DECISION
DATED AND FILED

August 9, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1097-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF121

**IN COURT OF APPEALS
DISTRICT III**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

GARY ROBERT PETERSEN,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Marinette County: JAMES A. MORRISON, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Following a jury trial, Gary Petersen was convicted of two counts of first-degree sexual assault of a child (sexual contact with a person

under age thirteen), as a persistent repeater, and one count of felony intimation of a victim, as a repeater. Petersen now appeals from his judgment of conviction, arguing that the circuit court erroneously exercised its discretion by: (1) allowing the State to introduce other-acts evidence at trial regarding Petersen's 1991 conviction for second-degree sexual assault of a child; (2) prohibiting Petersen from introducing evidence regarding a prior untruthful allegation of sexual assault allegedly made by the victim; and (3) denying Petersen's request for a mistrial based on a comment a prospective juror made during voir dire. We reject each of Petersen's arguments and affirm.

## BACKGROUND

¶2    In 2017, Petersen's wife, Denise,[1] informed law enforcement that her twelve-year-old daughter, Ann, who was Petersen's stepdaughter, had reported that Petersen had sexually assaulted her. Ann was subsequently interviewed at the Willow Tree Child Advocacy Center in Green Bay.

¶3    During the interview, Ann disclosed that Petersen first had sexual contact with her in August 2015, just before she turned eleven years old. Ann reported that during that incident, Petersen took her clothes off, touched her vagina, and used a dildo on her, which Ann stated was painful. Ann also described an incident in May 2016 during which Petersen took her pants and underwear off and inserted his fingers into her vagina. When Ann tried to get away, Petersen grabbed her, pulled her back onto the bed, and began touching her

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2019-20), we use pseudonyms when referring to the victim and her mother. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

more aggressively. After the May 2016 assault, Petersen told Ann that "he would kill her and hurt her mom" if she told anyone. Ann reported that Petersen had sexual contact with her on at least one or two other occasions between August 2015 and May 2016. Ann also reported that, at some unspecified time, Petersen "made threats of killing her mom and sister."

¶4 Based on Ann's allegations, the State charged Petersen with two counts of first-degree sexual assault of a child (sexual contact with a person under age thirteen), as a persistent repeater, and one count of felony intimidation of a victim, as a repeater. Petersen entered not-guilty pleas to all three of the charges, and the case was set for a jury trial.

¶5 Before trial, the State filed a motion to introduce other-acts evidence regarding Petersen's 1991 conviction for second-degree sexual assault of a child. That conviction stemmed from Petersen's year-long sexual relationship with a fourteen-year-old girl, Sarah,[2] at a time when Petersen was about twenty-nine years old. Petersen was a friend of Sarah's father and got to know her because he repeatedly visited her family's home. Sarah's diary entries showed that she and Petersen had sexual intercourse on eight occasions between March 17, 1990, and February 16, 1991.

¶6 At a friend's urging, Sarah ultimately reported her relationship with Petersen to a school liaison officer. Sarah did not want Petersen to get in trouble, however, because he was her boyfriend and she believed they were in love. When interviewed by law enforcement about Sarah's report, Petersen admitted having

---

[2] Again, we use a pseudonym when referring to the victim in the 1991 case.

3

sexual intercourse with Sarah on six to eight occasions. He subsequently pled no contest to a charge of second-degree sexual assault of a child for his actions with Sarah.

¶7 The State argued that evidence regarding Petersen's 1991 conviction was admissible to show his motive, opportunity, and intent to sexually assault Ann because the evidence tended to show that Petersen had a sexual preference for young girls. The State also argued that the evidence's probative value was not substantially outweighed by the danger of unfair prejudice. The circuit court agreed and granted the State's motion to admit the other-acts evidence.

¶8 Petersen filed a pretrial motion seeking to introduce evidence of a prior untruthful allegation of sexual assault allegedly made by Ann. According to the motion and a Brown County Health and Human Services report submitted by the State, in 2011, Ann's maternal grandmother told authorities that when Ann was five, Ann told the grandmother that Ann's maternal grandfather had put his fingers down her pants and rubbed her. Brown County assigned a case worker to investigate this allegation. The case worker interviewed Denise, who stated that Ann's grandmother was just trying to cause trouble. Denise agreed to bring Ann in for an interview, during which Ann denied that anyone had ever seen or touched her private parts.

¶9 The case worker subsequently spoke with Denise, who stated she "spoke with [Ann] about this and [Ann] denied ever saying any of this." Denise then stated, however, that Ann later changed her story and said she "made this up" because a friend told her that she would "get jewels and presents for saying this." Denise also told the case worker that she had been having "lots of problems with her mom," that her mom had been "threatening to go for Grandparents Rights,"

and that her mom had been "reporting [Denise] for a lot of things, all which are not true." Denise further stated that she was "very concerned about her mother's influence on the children." The case worker noted that Ann's grandfather—who was alleged to have touched Ann—had obtained a restraining order against Ann's grandmother—who had reported the alleged touching. The case worker ultimately closed the investigation, concluding that the allegation made by Ann's grandmother was unsubstantiated.

¶10 Petersen argued that evidence regarding the 2011 allegation against Ann's grandfather was admissible under WIS. STAT. § 972.11(2)(b)3., an exception to the rape shield statute that allows "[e]vidence of prior untruthful allegations of sexual assault made by the complaining witness" to be admitted in a prosecution for sexual assault of a child. The State opposed Petersen's motion to admit the evidence, arguing a reasonable jury "could not find that [Ann] made any allegation of sexual assault, much less an untruthful one." The State also argued that evidence regarding a possible false accusation made by Ann at age five was not relevant to Ann's credibility at age twelve when she accused Petersen of sexual assault. Additionally, the State asserted that the evidence's probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, as it had "already been established that the maternal grandmother had motives to fabricate what [Ann] said or suggest such a lie to [Ann]." The circuit court agreed with the State and denied Petersen's motion to admit evidence regarding the 2011 allegation.

¶11 Thereafter, on the first day of trial, the circuit court asked the prospective jurors during voir dire whether any of them could not "fairly and impartially listen to the evidence in this case and judge this case solely on the facts as you find them to be and on the law as I give it to you, putting aside every other

reason." A prospective juror responded, "Well, my sister works in foster care." The court asked the prospective juror to stand up and remove her mask[3] so that the court could hear her better. The following exchange then occurred:

> JUROR: My sister works in foster care in Green Bay and she's gone through a lot of these cases and like 80 percent of them, they've been guilty, so I kind of—
>
> THE COURT: Ma'am, so you think—Your sister has told you they've been guilty.
>
> JUROR: Yes.
>
> THE COURT: Okay. Do you think that would cause you to already make up your mind?
>
> JUROR: I already did, and it's—
>
> THE COURT: All right. Ma'am, you are excused. Thank you very much.

¶12    At a sidebar outside of the prospective jurors' presence, Petersen's attorney expressed concern regarding the excused juror's comment. Counsel stated he believed it was possible that the juror's comment had "poison[ed] the entire jury." The State opined that the issue could be rectified through a curative instruction. The circuit court decided to address the issue with the prospective jurors in a general fashion to determine whether the venire panel had been tainted.

¶13    When the prospective jurors returned to the courtroom, the circuit court addressed them as follows:

> Now the reason we go through this rather elaborate effort is so we can have a jury that is fair and impartial and it will decide this case only on the evidence that comes in through testimony and exhibits in the courtroom and only based upon the law that is presented to you by the Court, that is

---

[3] Petersen's jury trial took place in September 2020, during the COVID-19 pandemic.

me. And you are hearing some people express misgivings, and that's great that they do, but that's not evidence, so none of that is evidence. I appreciate—I applaud them for it. So please do not misunderstand me, but that's not evidence. Evidence is the proof in this case that comes into the case next door and the law that I give you. You all— those of you who serve as jurors must swear that you will find the facts as you as a group agree them—agree them to be. You will apply the very significant burdens of proof which the State has, and the defendant has no burden of proof, and you will follow the law in doing that. If anybody has any problem with that, that's the question I'm asking.

The court then asked: "[I]s there anybody now among my 24 [prospective jurors] who cannot listen to the evidence, consider the evidence and only the evidence, and apply the law and only the law that I give you, regardless of what thoughts you might have? Anybody who can't do that?" None of the prospective jurors responded in the affirmative.

¶14 After the jury was selected, Petersen moved for a mistrial based on the excused juror's comment about her sister's work in foster care. Petersen again asserted there was the "potential" that the juror's comment had poisoned the entire venire panel. The State opposed Petersen's motion, arguing that the juror's comment was made "fairly early on" during voir dire, "[i]t was not followed up on," and "nothing else was elicited to flesh out any more of [the juror's] reasoning for that." The circuit court agreed and denied Petersen's motion for a mistrial.

¶15 Petersen's trial proceeded, and the jury ultimately found him guilty of all three charges. Because Petersen was a persistent repeater, the circuit court was required to impose sentences of life imprisonment without the possibility of extended supervision on both of the first-degree sexual assault of a child charges. *See* WIS. STAT. § 939.62(2m)(c). On the witness intimidation charge, the court imposed a fourteen-year sentence consisting of nine years' initial confinement

followed by five years' extended supervision. Petersen now appeals. Additional facts are included in the discussion section where necessary.

## DISCUSSION

¶16 We review a circuit court's decisions regarding the admission of other-acts evidence and the admission of evidence of prior untruthful allegations of sexual assault for an erroneous exercise of discretion. *See State v. Sullivan*, 216 Wis. 2d 768, 780, 576 N.W.2d 30 (1998) (other-acts evidence); *State v. Ringer*, 2010 WI 69, ¶¶24, 28, 326 Wis. 2d 351, 785 N.W.2d 448 (prior untruthful allegations of sexual assault). The decision whether to grant a mistrial is also reviewed for an erroneous exercise of discretion. *See State v. Seefeldt*, 2003 WI 47, ¶13, 261 Wis. 2d 383, 661 N.W.2d 822.

¶17 We will sustain a circuit court's discretionary decision if the court examined the relevant facts, applied a proper standard of law, and used a rational process to reach a reasonable conclusion. *Sullivan*, 216 Wis. 2d at 780-81. The test is not whether this court, as an original matter, would have reached the same decision as the circuit court; the test is whether the circuit court erroneously exercised its discretion when reaching the decision in question. *Schneller v. St. Mary's Hosp. Med. Ctr.*, 162 Wis. 2d 296, 306, 470 N.W.2d 873 (1991). When exercising its discretion, a circuit court "may reasonably reach a conclusion which another judge or another court may not reach, but it must be a decision which a reasonable judge or court could arrive at by the consideration of the relevant law, the facts, and a process of logical reasoning." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

## I. Petersen's 1991 conviction

¶18    In Wisconsin, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."   WIS. STAT. § 904.04(2)(a).   Such evidence may be admissible, however, "when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

¶19    Courts apply a three-part test to determine whether other-acts evidence is admissible. *See Sullivan*, 216 Wis. 2d at 772-73.  First, the evidence must be offered for an acceptable purpose under WIS. STAT. § 904.04(2)(a). *Sullivan*, 216 Wis. 2d at 772.  Second, the evidence must be relevant under WIS. STAT. § 904.01.  *Sullivan*, 216 Wis. 2d at 772.  Third, the evidence's probative value must not be outweighed by the danger of unfair prejudice or by any of the other considerations listed in WIS. STAT. § 904.03.   *Sullivan*, 216 Wis. 2d at 772-73.   The proponent of the other-acts evidence bears the burden on the permissible purpose and relevance prongs of the *Sullivan* test, while the opponent bears the burden on the unfair prejudice prong.  *State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399.

¶20    Other-acts evidence "is particularly relevant in child sexual assault cases because an average juror likely presumes that a defendant is incapable of such an act."  *State v. Hurley*, 2015 WI 35, ¶28, 361 Wis. 2d 529, 861 N.W.2d 174.  Wisconsin courts therefore permit a "greater latitude of proof as to other like occurrences" in cases involving child sexual assault.  *State v. Davidson*, 2000 WI 91, ¶36, 236 Wis. 2d 537, 613 N.W.2d 606 (citation omitted).  The greater latitude rule has been codified in WIS. STAT. § 904.04(2)(b)1., which states that when a

defendant is charged with sexually assaulting a child, "evidence of any similar acts by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act." The greater latitude rule applies to each step of the *Sullivan* analysis. *Hurley*, 361 Wis. 2d 529, ¶59.

¶21 In this case, after applying the three-step *Sullivan* analysis, the circuit court granted the State's motion to admit other-acts evidence regarding Petersen's 1991 conviction for second-degree sexual assault of a child. The court's decision in that regard was not an erroneous exercise of discretion.

¶22 The first step of the *Sullivan* analysis is "not demanding" and is "largely meant to develop the framework for the relevancy determination" performed in the second step. *Marinez*, 331 Wis. 2d 568, ¶25. "As long as the State and circuit court have articulated at least *one* permissible purpose for which the other-acts evidence was offered and accepted, the first prong of the *Sullivan* analysis is met." *Id.* Here, the State offered the evidence regarding Petersen's 1991 conviction for at least two permissible purposes—namely, to establish Petersen's motive and intent to sexually assault Ann. *See* WIS. STAT. § 904.04(2)(a). As such, the circuit court reasonably determined that the State had satisfied the first step of the *Sullivan* analysis.

¶23 Turning to the second step of the *Sullivan* analysis, the circuit court reasonably concluded that the State's proffered other-acts evidence was relevant to establishing Petersen's motive and intent. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01.

10

¶24 To convict Petersen of first-degree sexual assault of a child, as charged in the criminal complaint and Information, the State needed to prove that Petersen had sexual contact with Ann—that is, that he intentionally touched Ann's intimate parts "for the purpose of sexually degrading or sexually humiliating [Ann] or sexually arousing or gratifying [Petersen]." *See* WIS. STAT. §§ 948.01(5)(a)1., 948.02(1)(e). Evidence that Petersen had previously been convicted of sexually assaulting a fourteen-year-old girl when he was an adult tended to show that Petersen is sexually attracted to underage girls. The evidence was therefore relevant to establish Petersen's motive for sexually assaulting Ann—i.e., to obtain sexual arousal or gratification—and to show that Petersen's intent in touching Ann was to become sexually aroused or gratified.

¶25 Petersen argues that evidence regarding his 1991 conviction was not relevant because the acts underlying that conviction were remote in time and were too dissimilar from the acts alleged in the instant case. In particular, Petersen asserts that the 1991 case involved a year-long, consensual relationship between a fourteen-year-old girl and a twenty-nine-year-old man, who was a nonfamilial acquaintance. Petersen further asserts that he and the victim in the 1991 case were dating and in love. Petersen also emphasizes that the 1991 case involved allegations of consensual sexual intercourse, without any allegations of force or coercion. In contrast, Petersen asserts that this case involves allegations of repeated, coercive assaults, which involved the nonconsensual touching of an eleven-year-old's genitalia by a family member—specifically, her fifty-three-year-old stepfather. Petersen further notes that while he admitted the sexual relationship at issue in the 1991 case and took responsibility for his actions, he has consistently denied sexually assaulting Ann.

¶26     The circuit court reasonably concluded that evidence regarding Petersen's conduct in the 1991 case was relevant, despite the twenty-five-year gap between that conduct and the conduct alleged in this case and despite the existence of some factual differences between the two cases.  The court noted that, in both cases, Petersen had formed a relationship with another adult that allowed him to gain access to that individual's child.  Also, the sexual acts in both cases "occurred in [Petersen's] bedroom when the 'lady of the house' was absent."  In addition, both cases involved "repeated acts of alleged sexual intercourse and other sexually intimate acts done at the urging and direction of [Petersen]."  Ultimately, the court concluded:

> In both cases, it is alleged that young girls, significantly below the age of consent, are repeatedly assaulted sexually by a man substantially older than them, in a very inappropriate relationship arising out of a close personal friendship between the families in the [1991 case] and an actual familial relationship in this case.  The similarity of these acts is of high probative value.

¶27     Petersen cites *State v. Friedrich*, 135 Wis. 2d 1, 398 N.W.2d 763 (1987), in support of his claim that the other-acts evidence in this case was too dissimilar to the charged conduct to be relevant.  Friedrich was charged with sexually assaulting his fourteen-year-old niece on two separate occasions while she was babysitting his children.  *Id.* at 7-8.  At trial, the State presented other-acts evidence that Friedrich had sexually assaulted the same niece four years earlier while he was driving her home from school; that Friedrich had sexually assaulted a thirteen-year-old girl who fell asleep while babysitting his children; and that Friedrich had made sexual advances toward an eighteen-year-old bartender who was employed at his tavern.  *Id.* at 17-18, 26.

¶28    On appeal, our supreme court concluded the circuit court had properly admitted the other-acts evidence regarding the prior sexual assaults of Friedrich's niece and the thirteen-year-old girl. *Id.* at 24.  The court reasoned that those acts were "highly probative of a scheme or plan" because they shared various characteristics with one another and with the charged assault—specifically, they involved "virtually identical" sexual contact with similarly aged girls who had familial or quasi-familial relationships with Friedrich.  *Id.*  In contrast, the court concluded the evidence regarding Friedrich's sexual advances toward the eighteen-year-old bartender was not properly admitted because the minimal probative value of that evidence was outweighed by the danger of unfair prejudice. *Id.* at 26.  The court reasoned that evidence regarding sexual comments made toward an adult woman did not "fit within the outline of the scheme or plan established with respect to [Friedrich's] seeking sexual gratification from young girls."  *Id.*  Instead, that evidence merely showed that Friedrich had "sought a consensual sexual relationship with an adult."  *Id.*

¶29    Like the admissible other-acts evidence in *Friedrich*, the other-acts evidence in this case shares common characteristics with the charged assaults.  Both cases involved Petersen having physical sexual contact with an underage girl, and in both cases Petersen gained access to the victim by forming a relationship with an adult member of her family.  Unlike the inadmissible other-acts evidence in *Friedrich*, the other-acts evidence here did not consist of mere verbal sexual advances toward an adult woman.  Under these circumstances, the circuit court reasonably concluded that, despite certain factual differences, Petersen's conduct in the 1991 case was similar enough to his alleged conduct in this case to establish his motive and intent to become sexually aroused or gratified by engaging in sexual conduct with underage girls.

¶30    The circuit court also reasonably concluded that the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice.  Probative value "reflects the evidence's degree of relevance. Evidence that is highly relevant has great probative value, whereas evidence that is only slightly relevant has low probative value."  *Hurley*, 361 Wis. 2d 529, ¶87 (citation omitted).  "If the [evidence's] probative value is close to or equal to its unfair prejudicial effect, the evidence must be admitted."  *Id.*  Moreover, prejudice "is not based on simple harm to the opposing party's case, but rather 'whether the evidence tends to influence the outcome of the case by improper means.'"  *Id.* (citation omitted).  For instance, unfair prejudice occurs when other-acts evidence "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case."  *Id.*, ¶88 (citation omitted).

¶31    Here, the circuit court found that the probative value of the other-acts evidence was high.  On the other side of the balance, the court acknowledged that admitting the other-acts evidence created a risk that the jury would "decide guilt in this case based upon what happened" in the 1991 case.  The court reasoned, however, that this risk could be mitigated by the use of a limiting instruction clarifying the proper purposes for which the jury could consider the other-acts evidence.

¶32    Limiting instructions "substantially mitigate any unfair prejudicial effect" and, in some cases, may "eliminate the potential for unfair prejudice."  *Id.*, ¶89.  In this case, the circuit court specifically instructed the jury of the permissible purposes for which it could consider the other-acts evidence, and the court further instructed the jury that it could not use the other-acts evidence "to conclude that the defendant is a bad person and for that reason is guilty of the

offenses charged." We presume that jurors follow the court's instructions. *State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). Under these circumstances, the court did not err by concluding that the probative value of the other-acts evidence was not outweighed by the danger of unfair prejudice.

¶33 In summary, when ruling on the admissibility of the other-acts evidence, the circuit court considered the relevant facts, properly applied the three-step *Sullivan* analysis, and used a rational process to reach a reasonable conclusion. The application of the greater latitude rule further supports the court's decision to admit the other-acts evidence in this case involving allegations of sexual assault of a child. Accordingly, we cannot conclude that the court erroneously exercised its discretion by admitting the other-acts evidence.

## II. Ann's alleged prior untruthful allegation of sexual assault

¶34 Wisconsin's rape shield statute provides, as a general matter, that evidence "concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct" is inadmissible in prosecutions for various crimes, including sexual assault of a child under WIS. STAT. § 948.02. WIS. STAT. § 972.11(2)(b). An exception to this general rule exists, however, for "[e]vidence of prior untruthful allegations of sexual assault made by the complaining witness." Sec. 972.11(2)(b)3.

¶35 Evidence of a complainant's alleged prior untruthful allegations of sexual assault may be introduced at trial "only after close judicial scrutiny." *Ringer*, 326 Wis. 2d 351, ¶26 (citation omitted). The evidence is admissible "only if the circuit court first makes three determinations: (1) the proffered evidence fits within WIS. STAT. § 972.11(2)(b)3[.]; (2) the evidence is material to a fact at issue

in the case; and (3) the evidence is of sufficient probative value to outweigh its inflammatory and prejudicial nature." ***Ringer***, 326 Wis. 2d 351, ¶27.

¶36  With respect to the first of these three determinations, "the circuit court must first conclude from the proffered evidence that a jury could reasonably find that the complainant made prior untruthful allegations of sexual assault." ***Id.***, ¶31.  Stated differently, the court must determine "whether a jury, acting reasonably, could find that it is more likely than not that the complainant made prior untruthful allegations of sexual assault." ***Id.***, ¶32.

¶37  Based on Petersen's proffered evidence, the circuit court found that a jury "could not come to the conclusion that there was a prior untruthful allegation of sexual assault" by Ann.  The court did not erroneously exercise its discretion in that regard.  Critically, the prior allegation of sexual assault was reported to authorities by Ann's grandmother, not by Ann herself.  When interviewed by a case worker in 2011, Ann denied that any assault had occurred.  The only evidence suggesting that Ann, as opposed to her grandmother, had made an untruthful allegation of sexual assault was Denise's statement to the case worker that although Ann initially denied "saying any of this," she later stated she "made this up" because her friend told her "she would get jewels and presents for saying this."  At most, however, this evidence showed that in 2011, *Denise* made an allegation that Ann had previously admitted making an untruthful allegation of sexual assault.  The court reasonably determined that this evidence was insufficient to permit a reasonable jury to find that it was more likely than not that Ann had made a prior untruthful allegation of sexual assault.

¶38  Moreover, the circuit court also reasonably determined that the probative value of the evidence regarding the 2011 allegation was outweighed by

the danger of unfair prejudice. The court reasoned that Ann's possible false accusation of sexual assault when she was five years old was minimally probative of her credibility in making a subsequent accusation of sexual assault when she was twelve years old because a five-year-old child cannot be "held to the same standard of truthfulness" as "a 12- or 13-year-old or even a 10-year-old." The court further reasoned that, given the evidence regarding the circumstances in which Ann's grandmother had reported the allegation to Brown County in 2011,

> the jury is going to spend an awful lot of time speculating about something that doesn't matter at all, whether Grandma was mad at [Ann's grandfather] or what the heck was going on, and all these other factors that might have encouraged somebody else to lie has nothing to do with the credibility of this person and these facts.

The court therefore concluded that Petersen's proffered evidence regarding the prior allegation of sexual assault was "unduly prejudicial" because, given the evidence's "very, very questionable province," admitting the evidence "would do much more harm than good."

¶39    On the record before us, we cannot conclude that the circuit court erroneously exercised its discretion by excluding Petersen's proffered evidence regarding the 2011 allegation of sexual assault. The court considered the relevant facts, applied the test set forth in *Ringer*, and provided a rational basis for its decision to exclude the evidence. As such, the court did not erroneously exercise its discretion.

### III.  Petersen's motion for a mistrial

¶40    Lastly, Petersen argues that the circuit court erroneously exercised its discretion by denying his motion for a mistrial. As noted above, the decision whether to grant a mistrial is committed to the circuit court's discretion. *See*

*Seefeldt*, 261 Wis. 2d 383, ¶13. The court must determine, "in light of the entire proceeding, whether the basis for the mistrial motion is sufficiently prejudicial to warrant a new trial." *State v. Givens*, 217 Wis. 2d 180, 191, 580 N.W.2d 340 (Ct. App. 1998). Not all errors warrant a mistrial, and "the law prefers less drastic alternatives, if available and practical." *Id.* (citation omitted). A mistrial is appropriate only when a "manifest necessity" exists for the termination of the trial. *Id.* (citation omitted).

¶41    Petersen moved for a mistrial based on the excused juror's statement during voir dire that her sister "works in foster care in Green Bay and she's gone through a lot of these cases and like 80 percent of them, they've been guilty." Petersen asserts that this statement tainted the entire venire panel by suggesting to the prospective jurors that there was an eighty percent chance that he was guilty. Petersen contends that by denying his motion for a mistrial and allowing his trial to proceed with a tainted panel, the circuit court violated his constitutional right to an impartial jury.

¶42    In support of this argument, Petersen relies on *Mach v. Stewart*, 137 F.3d 630 (9th Cir. 1997), *as amended* (Feb. 11, 1998). Mach was charged with sexually assaulting an eight-year-old girl. *Id.* at 631. The first prospective juror to be questioned during voir dire, Ms. Bodkin, was a social worker with the State of Arizona Child Protective Services. *Id.* at 631-32. Bodkin stated that she would "have a difficult time being impartial given her line of work, and that sexual assault had been confirmed in every case in which one of her clients reported such an assault." *Id.* at 632. The trial court continued to question Bodkin about this topic in front of the entire venire panel, and the court's questions "elicited at least three more statements from Bodkin that she had never, in three years in her position, become aware of a case in which a child had lied about being sexually

assaulted." *Id.* The court warned Bodkin and the entire panel that they were to determine Mach's guilt based on the evidence presented at trial, and Bodkin responded that she could "probably" do that. *Id.* The court later asked the prospective jurors whether they had any background or experience in psychology, and Bodkin responded that she had taken psychology courses, including courses in child psychology, and had "worked extensively with psychologists and psychiatrists." *Id.*

¶43 The trial court ultimately struck Bodkin for cause, but it denied Mach's request for a mistrial, rejecting his argument that Bodkin's statements had tainted the entire venire panel. *Id.* On appeal, the Ninth Circuit Court of Appeals determined that the trial court had erred in that respect. The court reasoned that a mistrial was warranted because the trial court had

> elicited from Bodkin (a) that she had a certain amount of expertise in this area (she had taken child psychology courses and worked with psychologists and psychiatrists; she worked with children as a social worker for the state for at least three years); and (b) four separate statements that she had *never* been involved in a case in which a child accused an adult of sexual abuse where that child's statements had not been borne out.

*Id.* at 632-33. The court further noted that although the trial court had warned Bodkin and the venire panel "that jurors are to make determinations based on the evidence rather than on their own experiences or feelings," the trial court "went on to elicit yet another statement from Bodkin that she had never known a child to lie about sexual abuse." *Id.* at 633. When the trial court asked the other jurors whether anyone disagreed with Bodkin's statement to that effect, "no one responded." *Id.*

19

¶44　On this record, the Ninth Circuit held that, at a minimum,

> when Mach moved for a mistrial, the court should have conducted further voir dire to determine whether the panel had in fact been infected by Bodkin's expert-like statements. Given the nature of Bodkin's statements, the certainty with which they were delivered, the years of experience that led to them, and the number of times that they were repeated, we presume that at least one juror was tainted and entered into jury deliberations with the conviction that children simply never lie about being sexually abused. This bias violated Mach's right to an impartial jury.

*Id.* (footnote omitted).

¶45　As the State aptly notes, *Mach*'s holding is not binding on this court. *See Streff v. Town of Delafield*, 190 Wis. 2d 348, 356, 526 N.W.2d 822 (Ct. App. 1994). Moreover, although we may choose to follow a lower federal court's decision that we find persuasive, *see id.*, *Mach* is materially distinguishable from the instant case. In *Mach*, the prospective juror spoke from a clear position of authority—the venire panel was aware that she been employed as a social worker dealing with children for at least three years, that she had taken courses in child psychology, and that she had worked extensively with psychologists and psychiatrists. *Mach*, 137 F.3d at 632. Against that background of stated expertise, the prospective juror made at least four separate statements that she had never encountered a case in which a child had lied about being sexually assaulted. *Id.* The trial court engaged in prolonged questioning of the prospective juror regarding that topic in front of the entire venire panel before eventually excusing her for cause. *Id.*

¶46　In contrast, the excused juror in this case did not testify from a position of personal authority or expertise. Instead, she testified that her *sister*

20

worked in foster care and her *sister* had told her that in eighty percent of cases the person accused of sexually assaulting a child was guilty. The excused juror did not claim to have any personal knowledge about whether her sister's statement to that effect was true, nor did she claim that her sister was an expert regarding child sexual assault. In addition, unlike the prospective juror in **Mach**, the excused juror here made a single objectionable comment, and the circuit court promptly excused her for cause after determining that she had already made up her mind and could not be impartial. The court did not engage in prolonged questioning of the excused juror in front of the entire panel, nor did it elicit multiple objectionable statements from her.

¶47 Moreover, after excusing the juror in question, the circuit court expressly instructed the remaining members of the venire panel that the jury was required to decide the case based only upon the evidence presented at trial and that, although the panel had heard some prospective jurors "express misgivings," those comments were "not evidence." The court then confirmed that the remaining members of the panel could "listen to the evidence, consider the evidence and only the evidence, and apply the law and only the law that I give you, regardless of what thoughts you might have." These circumstances materially distinguish the present case from **Mach**.

¶48 When denying Petersen's motion for a mistrial, the circuit court expressly found that the excused juror's comment about her sister's experience working in the foster care system was not made from a "position of authority." The court elaborated, "It's not like she said my brother, the child psychiatrist who deals with abused children says that 90 percent of this is the case, or my sister who's a therapist at Taycheedah [Correctional Institution] and deals with offenders … said these things." The court further stated that it suspected, based on

21

the excused juror's body language, that she made the comment in question because she was "trying to get herself kicked off the jury."  If the court drew that conclusion based on the excused juror's body language, it is reasonable to conclude that other members of the venire panel would have had a similar impression and would therefore have given little weight to the excused juror's comment.

¶49     The circuit court also noted that "little was made of [the excused juror's] comment" in front of other prospective jurors, which lessened the chance that the comment had tainted the entire panel.  The court further reasoned that the panel

> was told, without this matter being highlighted, that they had to decide the case based upon the facts and the evidence they received in court and nothing else, and they had to put aside all of their questions.  I specifically asked them three or four different times in different ways can you do this.  Every one of them agreed they could.

On this record, the court's denial of Petersen's request for a mistrial was not an erroneous exercise of discretion.

¶50     Citing *Mach*, Petersen asserts that if the circuit court chose not to grant a mistrial, it was instead required to conduct further voir dire to determine whether the panel had, in fact, been tainted by the excused juror's "expert-like statements."  *See Mach*, 137 F.3d at 633.  The court reasonably determined, however, that the excused juror's comment was not made from a position of authority or expertise, unlike the objectionable statements in *Mach*.  Additionally, after the juror in this case was excused for cause, the court specifically informed the panel that any "misgivings" prospective jurors had voiced were "not evidence," and the court confirmed that the remaining members of the panel could

22

decide the case based solely on the evidence presented and the legal instructions the court provided. Under the circumstances, this procedure was sufficient to ensure that the venire panel was not tainted by the excused juror's comment, and the court was not required to grant Petersen's request for a mistrial.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.